# AFFIDAVIT
## of
## DAVID L. WILMSMEYER
## SPECIAL AGENT
## DRUG ENFORCEMENT ADMINISTRATION

I, David L. Wilmsmeyer, being first duly sworn, do depose and state that:

1. I am a Special Agent with the Drug Enforcement Administration (DEA). As such, I am an investigative and law enforcement officer of the United States (U.S.) within the meaning of Title 18, U.S. Code, Section 2510 (7), who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, U.S. Code, Section 2516.

2. I have been a Special Agent with the DEA since July 2012. I am currently assigned to the St. Louis Field Division, Task Force Group 31. In the course of my employment with DEA, I successfully completed Basic Agent Training at Quantico, Virginia, and have received specialized training and experience in the investigation of narcotic related offenses concerning violations of the Controlled Substances Act contained within Title 21, United States Code, including the transportation, distribution and sale of controlled substances. I have been trained to recognize the methods and trends of trafficking illicit drugs and the laundering of drug proceeds. I have been involved with numerous narcotics related investigations which have resulted in the seizure of narcotics and narcotics related assets. Upon my successful completion of Basic Agent Training I was assigned to the Miami FD High Intensity Drug Trafficking Area (HIDTA) Task Force Group 41. During my tenure in the DEA Miami FD I participated in multiple complex drug trafficking and money laundering investigations. In May 2015, I was reassigned to the DEA St. Louis FD.

3. Prior to my commission as a DEA Special Agent, I was employed as a police officer with the city of Creve Coeur, Missouri, from 2006 to 2008, and as a police officer with the City of

St. Charles, Missouri, from 2008 to 2012. From 2009 to 2012, I was assigned as a Task Force Officer (TFO) with the DEA in St. Louis, Missouri. During my time as a Task Force Officer, and now as a Special Agent, I have been the affiant on multiple affidavits, including Title-III wiretap affidavits.

4. Presently, I am a member of an investigative team of highly experienced investigators comprised of Special Agents and Task Force Officers of the DEA, who are investigating the criminal activities of a Drug Trafficking Organization (the "TONEY DTO"), organized and directed by ROBERT TONEY a/k/a "Rasheed." The instant investigation has demonstrated that the TONEY DTO is responsible for the trafficking in quantities of crystal methamphetamine ("ice") and heroin in the Western District of Missouri.

5. The information contained in the affidavit is either personally known to me, or represents the collective knowledge of the investigating team and others.

6. Prior to January 18, 2019, an undercover officer (UC) and TONEY had multiple telephonic conversations coordinating a future drug transaction, which were controlled and recorded by the UC. The UC and TONEY eventually agreed to meet at 8:30 a.m. in Kingdom City, Callaway County, Missouri, on January 18, 2019. TONEY was prepared to carry out drug transactions with the UC sooner, but DEA operational commitments would not allow for this to occur. TONEY agreed to deliver a quarter pound (four ounces) of methamphetamine, two (2) grams of heroin, and one gram of cocaine to the UC in exchange for $3,200.

7. On January 18, 2019, at approximately 4:50 a.m., DEA agents and TFOs initiated surveillance at TONEY's residence, 12913 South Blackfoot Drive, Olathe, Kansas, and observed that TONEY's green Nissan Altima, Kansas license 372 FKP, was parked in the driveway with the engine running. A short time later, an agent observed TONEY exit the residence, open the

driver's door of the car, reach in and unlatch the gas lid, and then "mess" around under the gas lid.

8. TONEY then departed his residence and traveled to a convenience store, then traveled to a residence in Kansas City, Missouri. TONEY entered the residence for a short time, and was observed leaving the residence with a man (who was later identified as Billy Duren). TONEY departed that location in his vehicle, and Duren departed the location in a separate vehicle. TONEY and Duren were surveilled as they traveled in tandem to a BP gas station. At the gas station, Duren purchased gas for his vehicle; however, he did not put any gas in his vehicle. TONEY and Duren were again observed traveling in tandem to another residence in Kansas City, Missouri, where Duren left his vehicle parked. Duren then entered the passenger side of TONEY's vehicle. Members of the surveillance team maintained surveillance of TONEY and Duren as they eventually entered eastbound Interstate-70 and traveled toward Kingdom City, Missouri.

9. The UC positioned himself inside the Iron Skillet Restaurant at 3304 Gold Road, Kingdom City, Callaway County, Missouri. The UC also placed a telephone call to TONEY, advising that he (the UC) was having breakfast inside the restaurant and would be waiting for TONEY. TONEY informed the UC that he (TONEY) was in the area of Columbia, Boone County, Missouri, and agreed to meet the UC inside the restaurant upon his arrival. The surveillance team observed TONEY exit Interstate-70 at Kingdom City, Missouri. TONEY then dropped Duren off at the Fast Lane convenience store on the south side of Interstate-70 and west of Highway 54. TONEY drove directly to the Iron Skillet Restaurant. TONEY parked his vehicle, and as he exited his vehicle in the parking lot, agents arrested TONEY without incident.

10. During a subsequent search of the TONEY's vehicle, a black plastic bag was located concealed under the gas tank lid, which covers the gas cap area. Inside the black plastic bag, I located four (4) individual clear plastic bags containing suspected methamphetamine, which

field-tested positive for methamphetamine. Also inside the larger black plastic bag along with the packages of methamphetamine was a smaller black plastic bag, which was tied closed with a knot. Expecting this smaller bag to contain two (2) grams of heroin and one (1) gram of cocaine, as agreed upon between the UC and TONEY, agents did not open the smaller bag as a safety precaution because of possible heroin and/or fentanyl exposure.

11. TONEY was transported to the DEA-Jefferson City office, where I read TONEY his *Miranda* rights. TONEY stated that he understood his rights, and waived the same by beginning to answer questions. Although TONEY did not invoke his *Miranda* rights, he did not answer any of the questions truthfully. TONEY denied residing in Olathe, Kansas. TONEY advised that he was in transit to the St. Louis area, and stated that he had stopped at the Iron Skillet restaurant to use the bathroom. When TONEY was asked why he dropped Duren off at the Fast Lane convenience store, TONEY denied knowing Duren, and also denied ever having a passenger in his vehicle. TONEY denied any knowledge of drugs being under the gas lid of his vehicle. Due to TONEY's lack of candor, the interview was terminated.

Presented by reliable electronic means and sworn to telephonically

**David L. Wilmsmeyer**
Special Agent
Drug Enforcement Administration

SWORN TO and subscribed to me via telephone on this 18th day of January, 2019.

*Sarah W. Hays*
**Sarah W. Hays**
United States Magistrate Judge

4