# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 19-04018-01-CR-C-BCW |
| ROBERT LUCIOUS TONEY, | ) |
| Defendant. | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

Comes Now Defendant Robert Lucious Toney, by and through his attorney, Steven R. Berry, and in support of his argument for sentencing in this matter, states as follows:

### I. FACTUAL BACKROUND

Mr. Toney concedes that the facts of the instant offense are consistent with the allegations set forth in paragraphs five through fifteen of the PSI. (Doc. 29).

Mr. Toney has been in custody on the instant case since his arrest on January 18, 2019, and has served approximately eighteen months in pretrial confinement.

### II. SENTENCING GUIDELINE CALCULATION

In determining the presumptive Guidelines range the Probation Office established a Base Offense Level of 32, pursuant to U.S.S.G. §2D1.1(c)(4), based on at least 150 grams, but less than 500 grams of actual methamphetamine (PSR, ¶22). The PSR also recommends a two-level increase in the offense level for possession of a firearm pursuant to U.S.S.G. §2D1.1(b)(1). (PSR, ¶ 23). After subtracting three levels for acceptance of

responsibility, the proposed Total Offense Level is 31. (PSR, ¶31).

Based only on his record of convictions, Mr. Toney's criminal history category was determined to be IV. (PSR ¶38). The Probation Office calculated an advisory Guidelines range of 151 to 188 months. (PSR, ¶67).

## A. OBJECTIONS TO THE GUIDELINES RANGE

### 1. Objections Affecting the Guidelines Calculation

As noted previously, the Probation Office recommends a two-level enhancement under U.S.S.G. §2D1.1(b)(1)), based on the assertion that Mr. Toney possessed a firearm in connection with the instant offense. However, Mr. Toney submits that the circumstances do not support a finding that the firearm in question was possessed in connection with the charged offense, and therefore objects to the enhancement.

Mr. Toney understands that the Guidelines suggest that this enhancement will apply in most cases in which a firearm is present during a drug trafficking arrest, "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. §2D1.1(b)(1), Application Note 11(A). However, even under that standard, Mr. Toney states that the firearm was not possessed in connection with the instant offense, and the facts as set forth in the PSIR support his position that it is "clearly improbable" that the firearm was possessed as part of the instant offense.

Mr. Toney was arrested in Kingdom City, Missouri, which is approximately 165 miles, or a two-and-a-half-hour drive from his residence in Olathe, KS. Mr. Toney was unarmed when he was taken into custody. If the firearm was possessed in connection with the instant offense, common sense would dictate that Mr. Toney would have the firearm

on his person or at least in his vehicle at the time of his meeting with the undercover agent that led to his arrest.

The firearm was seized from Mr. Toney's residence, in a bedside nightstand. While there was a small amount of fentanyl found in the residence, it was in the kitchen and not in the bedroom where the firearm was found. (PSR ¶ 13). There was no large quantity of drugs or money to be protected in the residence. Therefore, Mr. Toney submits that it is "clearly improbable" that the firearm was possessed in connection with his drug trafficking offense, and the enhancement should not apply.

Absent application of this two-level enhancement, Mr. Toney's correct Total Offense Level should be 29, and the advisory Guidelines range would be 121 to 151 months.

## 2. Objections Not Affecting the Guidelines Calculation

Mr. Toney filed additional objections to the PSR that would not change the Guidelines range in this case. Mr. Toney maintains those objections, but will not restate them in this memorandum except to the extent that they are relevant to discussion of the relevant sentencing factors under 18 U.S.C. §3553(a).

Given the nature and circumstances of the instant offense, as well as the history and characteristics of Mr. Toney, he asks that this Court impose the mandatory minimum sentence of 120 months on Counts One and Two, and 60 months on Count Three, to run concurrently with each other.

## III. CONSIDERATION OF RELEVANT SENTENCING FACTORS PURSUANT TO 18 U.S.C. §3553(a)

**A. Nature and Circumstances of the Offense, 18 U.S.C. Section 3553(a)(1)**

Mr. Toney pled guilty to distribution of methamphetamine, possession with intent to distribute methamphetamine, and interstate travel in furtherance of a racketeering enterprise. (Doc. 11). Mr. Toney acknowledges the serious nature of the offense, but it is worth noting that Mr. Toney was cooperative with the arresting officers, and never exhibited any violent behavior during the course of the offense. To the contrary, a review of the recorded calls and meetings in this case, Mr. Toney was always friendly and in no way threatening to the undercover agent. While there was a firearm found during a search of Mr. Toney's residence, he did not bring it with him when engaged in the instant offense, nor did he ever indicate to the undercover agent that he was armed during their encounters with one another.

Given the nature and circumstances of his offense, Mr. Toney asks that this Court impose the mandatory minimum sentence of 120 months on Counts One and Two, and 60 months on Count Three, to run concurrently with each other, as this is a punishment that is sufficient but not greater than necessary to achieve the sentencing goals under 18 U.S.C. §3553(a).

**B. The History and Characteristics of the Defendant, 18 U.S.C. Section 3553(a)(1)**

Mr. Toney was born and raised in St. Louis County, in an intact family with both parents and six siblings. (PSR ¶ 43). As of his sentencing date, he is sixty-eight years of age. Early in life Mr. Toney experienced the loss of his older brother, Charles, when

Charles was just twelve years old, as the family traveled through segregation-era Mississippi. Charles was suffering from dehydration but was turned away from the hospital due to his race, and by the time he reached another hospital, it was too late to save Charles's life. (PSR ¶45).

Mr. Toney has two surviving siblings, and maintains regular contact with them. His sister, Beverly Toney, resides in St. Louis, Missouri, and has maintained regular contact with undersigned counsel. (PSR ¶44). Mr. Toney is married, and enjoys a supportive relationship with his wife. Upon his release from custody it is his intention to reside with her. (PSR ¶47).

The primary aggravating factor in Mr. Toney's history is his prior conviction for murder, robbery, and associated offenses, in 1973. (PSR ¶35). Mr. Toney was nineteen years old when that offense was committed, and served 38 years in prison as a result of the conviction. Mr. Toney is sincerely remorseful for his actions in that case, but stands by his prior statement as documented in paragraph 35 of the PSR, that he participated in the robbery, but did not shoot anyone. To his credit, while serving his sentence Mr. Toney earned his GED, participated in restorative justice programs, and maintained a number of jobs within the prison system. (PSR ¶¶35, 63).

Mr. Toney has his GED (PSR ¶58), and despite some periods of employment, he has shown the ability to maintain employment and make significant contributions to the family income. (PSR ¶¶60-62). The instant offense appears to be inconsistent with all other aspects of his supervision, as he is described in state probation and parole records as an "exemplary parolee," who is "respectful, courteous and compliant." (PSR ¶35).

As noted previously, Mr. Toney has been in custody since January 18, 2019. While serving time in pretrial custody, Mr. Toney has been a model prisoner with no reported violations. (PSR ¶4).

Counts One and Two of the Indictment to which Mr. Toney pled guilty each carry a mandatory minimum sentence of ten years. Mr. Toney was sixty-six years old at the time of the instant offense, and now is sixty-eight years of age. If the Court imposes a total sentence of 120 months in this case, Mr. Toney will be in his mid-70s by the time he is released from the Bureau of Prisons. He will be subject upon release to supervision not just by the United States Probation Office, but also will remain on lifetime parole with the State Board of Probation and Parole. Any more than ten years in prison exceeds what is necessary to achieve the sentencing goals of 18 U.S.S.C. §3553(a).

**C. The Need to Afford Adequate Deterrence, and To Protect the Public From Further Crimes of the Defendant, 18 U.S.C. Sections 3553(a)(2)(B) and (C)**

During the past eighteen months, Mr. Toney has had a significant amount of time to reflect on his conduct in the instant offense. A sentence of 120 months is a significant deterrent to Mr. Toney, and is certainly sufficient to impress upon him the need to avoid any further involvement in the criminal justice system.

As to the issue of general deterrence, a sentence of 120 months is sufficient to impress upon others that anyone convicted of a similar offense will be subject to a significant prison term. To the extent that general deterrence is possible, a ten-years sentence is sufficient to achieve that objective.

## IV. SENTENCING RECOMMENDATION

Based on the 18 U.S.C. Section 3553(a) factors discussed in this Memorandum, the defendant submits that concurrent sentences of 120 months on Counts One and Two, and a concurrent sentence of 60 months on Count Three, would constitute "a sentence sufficient, but not greater than necessary," to achieve the purposes set forth in 18 U.S.C. Section 3553(a)(2).

Respectfully submitted,

*/s/ Steven R. Berry*

**STEVEN R. BERRY,** # 48586
Assistant Federal Public
Defender 80 Lafayette Street,
Suite 1100 Jefferson City,
Missouri 65101 (573) 636-8747
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of July, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants in this case, and a copy was mailed, via the United States Postal Service, to all non-CM/ECF participants.

*/s/ Steven R. Berry*
**STEVEN R. BERRY**